FILED

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA** 04 MAR 30 AM II: 05
**SOUTHERN DIVISION**

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| **JUDY JONES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CASE NO. CV 02-B-0199-S** |
| ) | |
| **BELLSOUTH** ) | **ENTERED** |
| **TELECOMMUNICATIONS, INC.,** ) | |
| ) | |
| **Defendant.** ) | **MAR 30 2004** |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary

Judgment, (doc. 18), and plaintiff's Motion for Leave to File Motion for Summary Judgment

Out of Time, (doc. 25).  Plaintiff, Judy Jones, filed this lawsuit against defendant, BellSouth

Telecommunications, Inc., alleging a claim for wrongful termination of long term disability

benefits in violation of § 502(a)(1)(B) of the Employee Retirement Income Security Act of

1974 ("ERISA").  Upon consideration of the record, the submissions of the parties, the

arguments of counsel, and the relevant law, the court is of the opinion that defendant's

Motion for Summary Judgment, (doc. 18), is due to be denied, and plaintiff's Motion for

Leave to File Motion for Summary Judgment Out of Time, (doc. 25), is due to be granted.

## I. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record

shows "that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the

3⁰

initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every *reasonable* inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. <u>STATEMENT OF FACTS</u>

Plaintiff was an employee of defendant.  As defendant's employee, plaintiff was a participant in and beneficiary of defendant's short term disability ["STD"] and long term disability ["LTD"] plans, which are qualified ERISA plans.

2

The STD and LTD plans define "disability" as "a medical condition which makes a Participant unable to perform any type of work as a result of a physical or mental illness or accidental injury." (Doc. 21, Ex. 11 at 3123; *see also id.*, Ex. 12 at 3147.) The STD plan provides benefits for "up to 52 weeks," (*id.*, Ex. 11 at 3103); the LTD plan provides benefits if the participant is "still disabled" after "short-term disability benefits expire," (*id.*, Ex. 12 at 3136).

BellSouth Corporation, the plan administrator, delegated the day-to-day administration of the LTD plan to the Employees' Benefit Committee[1] ["EBC"] and Employees' Benefit Claim Review Committee[2] ["EBCRC"]. (*Id.* at 3139.) The EBCRC had "exclusive, discretionary authority to finally and conclusively interpret and administer the provisions of the [LTD plan]" for defendant. (*Id.* at 3141.) Effective September 3, 1996, the EBCRC "delegated to Kemper National Services the duty to grant or deny initial claims for benefits under the plan for BellSouth Telecommunications, Inc., . . . plan participants." (*Id.* at 3139.) However, "[t]he EBCRC . . . continue[s] to review, on appeal, denied claims." (*Id.*) Kemper is compensated for its services on a flat-fee basis. (Doc. 22 ¶ 3.)

Plaintiff was determined to be disabled and entitled to benefits under the STD Plan. On February 25, 1999, before the expiration of plaintiff's STD benefits, plaintiff was referred

---

[1]EBC administers the plan for BellSouth Corporation, BellSouth D.C., Inc., and BellSouth Advertising & Publishing Corporation. (Doc. 21, Ex. 12 at 3139.)

[2]EBCRC was responsible for BellSouth Business Systems, BellSouth Communications Systems, Inc., and defendant BellSouth Telecommunications. (*Id.*)

to Charles J. Whetsell, Ph. D., for a psychological evaluation. (*See* doc. 22, Ex. A, ex. 1 at 1.) Dr. Whetsell found, based on his evaluation, that plaintiff would "likely be able to return to work in approximately three months, especially if she initiates a course of psychotherapy to augment her psychopharmacological treatment. She may return to working 40 hour shifts [sic] when she returns to work, but light duty should be considered, with permanent restrictions of not working overtime and not being subject to shift changes in her work schedule." (*Id.*) He diagnosed plaintiff as suffering from "major depressive disorder, single episode, moderate severity" and "generalized anxiety disorder," and he gave plaintiff a GAF of 50, which indicates a serious impairment.[3] (*Id.* at 4-5.) He also noted that plaintiff was "highly distressed, alienated, and experiencing marked anxiety and depression, and that her "profile is typical for someone who experiences social withdrawal, problems in relationship, and somatization of psychological problems." (*Id.* at 5.)

After 52 weeks of STD benefits, Kemper informed plaintiff that she was eligible for LTD benefits, which she began receiving on July 2, 1999. (Doc. 21, Ex. 9 at 80.)

In May 2000, Kemper asked plaintiff to complete a questionnaire, for the purpose of determining plaintiff's "continu[ing] eligibility for benefits." (*Id.* at 88.) Plaintiff completed the questionnaire, indicating that she was disabled from "major depression." (*Id.* at 90.)

---

[3]A GAF of 50 is defined as "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Banks v. Massanari*, 258 F.3d 820, 831 (8th Cir. 2001)(Heaney, J., dissenting)(citing DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. 2000)).

Plaintiff indicated that her current health providers were: (1) James Lee, M.D.; (2) James O. Finney, Jr., M.D.; (3) Robert. W. Mitchell, M.D.; and (4) David B. O'Neal, M.D. (*Id.* at 91-92.) Kemper sent letters to Dr. Lee, (letter dated August 30, 2000), and Dr. O'Neal, (letter dated October 2, 2000), seeking updated information regarding plaintiff's condition. (*Id.* at 93, 96.) The record before this court contains information received from Drs. Finney and Lee. (*Id.* at 97-98, 106-07.)

Dr. Finney indicated that plaintiff had a "slight limitation" in her functional physical capacity, and a "marked"and a "severe" limitation in her functional mental capacity. (*Id.* at 98.) He noted plaintiff had "major depression" and "memory loss." (*Id.* at 97.)

In a report dated March 22, 2001, Dr. Lee, plaintiff's psychiatrist, indicated that plaintiff had no significant impairment in "Cognitive functioning," "Reality Testing," "Ability to Modulate Affect," and "Ability to Demonstrate Persistence, Pace and Stamina." (*Id.* at 106-07.) However, he found she was limited in her "Ability to Exercise Reasonable Social Judgment and Impulse Control," because she had "poor impulse control." (*Id.* at 106.) He assessed plaintiff's GAF as 70,[4] and he indicated that he had not instructed plaintiff to remain off work. (*Id.* at 107.)

---

[4]A Global Assessment of Functioning [GAF] score of 70 indicates "some mild symptoms or some difficulty in social, occupational or school functioning, but that the individual is generally functioning pretty well, with some meaningful interpersonal relationships." *Morales ex rel. Morales v. Barnhart*, 218 F. Supp. 2d 450, 456 (S.D.N.Y. 2002).

On July 16, 2001, Kemper notified plaintiff that, as administrator of the LTD Plan, it was denying her claim for benefits. (*Id.* at 122-23.) As grounds for its denial, Kemper noted that the "transferable skills analysis[5] identified three occupations that [plaintiff could] do based on [her] age, work experience, and education," and these jobs were available within the area, based on the "[r]esults of the Labor Market Survey."[6] (*Id.* at 122 (footnotes added).)

On August 24, 2001, plaintiff appealed this decision. (*Id.* at 134.) The Appeals Review Committee for plaintiff appeal consisted of three Kemper employees[7] – "Medical Director Dr. Jake Lazarovic, Dr. Robert Dawes, and Ms. Ilene Joseph." (Doc. 22, ¶ 10.)

On September 18, 2000, defendant had made the services of Allsup Inc. available to plaintiff; Allsup is "a specialized claims administration company that provides a full range of Social Security services to disability applicants. (Doc. 21, Ex. 9 at 94.) Slightly less than

---

[5]*See* doc. 21, Ex. 9 at 113-16 ("Employability Report").

[6]*See* doc. 21, Ex. 9 at 117-21 ("Labor Market Survey").

[7]Neither party argues that Kemper acted outside its authority in deciding plaintiff's appeal. The Appeals Committee that reviewed plaintiff's claim was "composed of a number of Kemper representatives, including Kemper staff physicians. **No BellSouth employee sits on this committee.**" (Doc. 22 ¶ 9.) However, the Summary Plan Description for the LTD Plan states –

* Effective September 3, 1996, the BellSouth Telecommunications, Inc. EBCRC delegated to Kemper National Services the duty to grant or deny initial claims for benefits under the plan for BellSouth Telecommunications, Inc., and BellSouth Business Systems, Inc. plan participants. ***The EBCRC will continue to review, on appeal, denied claims.***

(Doc. 22, Ex. D at 5 (emphasis added).) This apparent contradiction between the terms of the plan and the facts of this case has not been addressed by either party.

6

one year later, on August 29, 2001, Allsup, Inc., notified Kemper that it was closing plaintiff's Social Security case because it had concluded that plaintiff's "case is not strong enough to satisfy Social Security's stringent definition of total disability." (*Id.* at 137.) Notwithstanding Allsups's reservations regarding the viability of plaintiff's claim for Social Security benefits, the Social Security Commission awarded plaintiff disability benefits on October 26, 2001. (Doc. 21, Ex. 16.)[8]

Dr. Lee, in a letter to plaintiff's attorney dated October 5, 2001, reported that, although plaintiff's "[s]ymptoms of anxiety and depression were fairly stable by 03/22/01," plaintiff had "reported a major exacerbation of symptoms including, crying episodes, increased anxiety, sense of frustration and anger in her changed status in regard to work and benefits." (Doc. 21, Ex. 9 at 157-58.) He noted –

---

[8]The Administrative Law Judge's decision on plaintiff's Social Security claim notes that plaintiff "has been disabled since June 26, 1998," based on "major depression, recurrent without psychosis; anxiety disorder, NOS; and cognitive disorder, NOS." (Doc. 21, Ex. 16, Decision at 1, 3 (citations omitted).)

"[A]pproval of disability benefits by the Social Security Administration is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA- covered plan. *See Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1452 n. 5 (11th Cir. 1997). However, we have held that '[a] district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits.' *Kirwan v. Marriott Corp.*, 10 F.3d 784, 790 n.32 (11th Cir. 1994)." *Whatley v. CNA Ins. Companies*, 189 F.3d 1310, 1314 n.8 (11th Cir. 1999). The decision of the Social Security Administration was issued the day after the decision of the Appeals Committee and therefore was not before the Committee. Defendant argues that SSA's earlier denial of plaintiff's request for disability supports the reasonableness of its decision. However, this evidence does not change the court's view that on consideration of all the evidence before it, Kemper's decision to terminate plaintiff's long-term disability benefits was arbitrary and capricious.

> In my opinion, this unfortunate lady, [sic] is not capable of being gainfully employed either now or in the foreseeable future. I do not believe that she would be able to tolerate minimal stresses in the job market. Her lability of affect, frequent crying, difficulty in making simple decisions, and her problems dealing with the ongoing stress at home, in my opinion, render her permanently and totally disabled.

(*Id.* at 158.) Dr. Lee also completed a Supplemental Questionnaire as to Residual Functional Capacity, in which he stated that he did not believe that plaintiff was capable of being employed. (*Id.* at 159-60.)

On October 25, 2001, Kemper sent plaintiff's attorney a letter that stated the BellSouth Appeals Committee had upheld the termination of plaintiff's the LTD benefits. (*Id.* at 215-16.) The letter states:

> On October 24, 2001 the BellSouth Appeals Committee reviewed your clients [sic] appeal of the BellSouth Disability Administrator's notification that Ms. Jones was not eligible to receive Long Term Disability benefits effective 7/31/01.
>
> After careful consideration of all facts, including medical information received from you on the date of the meeting, the Committee sustained the Administrator's decision to deny Long Term Disability benefits . . . .
>
> . . .
>
> The determination was based upon medical information provided by [plaintiff's] treating physician's [sic], Dr. Lee, and Dr. Finney. Also included was the evaluation performed by Dr. Whetsell, the Transferable Skills Analysis, and the Labor Market Survey performed, not [sic] of which supported that [plaintiff] was totally disabled from all work effective 7/31/01. The subsequent information supplied, for [plaintiff's] appeal, did not include supportive objective medical information, and therefore she was not considered to be totally disabled, as defined in the BellSouth Long Term Disability Plan.

(*Id.* at 215-16.)  The letter did not indicate that the Appeals Committee had rejected the October report from Dr. Lee because it conflicted with Dr. Lee's March report.

## III.  DISCUSSION

Plaintiff alleges that defendant wrongfully terminated her LTD benefits.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), *quoted in Jett v. Blue Cross & Blue Shield, Inc.*, 890 F.2d 1137, 1138-39 (11th Cir. 1989) and *cited in Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38 (11th Cir. 1989).  As set forth above, the language of the LTD plan at issue confers the requisite discretionary authority to defendant necessary to require the court to review defendant's decision to deny benefits under the arbitrary-and-capricious standard.

The Eleventh Circuit has held:

> The arbitrary and capricious deference is diminished, though, if the claims administrator was acting under a conflict of interest.  If the claims administrator was acting under a conflict of interest, the burden shifts to the administrator to prove that its interpretation of the plan provisions committed to its discretion was not tainted by self interest.  Accordingly, this court has adopted the following standards for reviewing administrators' plan interpretations:  (1) de novo where the plan does not grant the administrator discretion; (2) arbitrary and capricious where the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest.

*See HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir. 2001)(internal quotations, alternations, and citations omitted).

Plaintiff asserts that Kemper is defendant's agent and that defendant ultimately pays benefit claims out of its assets. Therefore, plaintiff asserts that the heightened or modified arbitrary and capricious standard applies to review of defendant's decision to terminate her LTD benefits. *See id.* In this circuit, "when an insurance company serves as ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs 'direct, immediate expense as a result of benefit determinations favorable to [p]lan participants.'" *Brown v. Blue Cross & Blue Shield of Ala.*, 898 F.2d 1556, 1561 (11th Cir.1990) (quoting *de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989)). "The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate." *Id.* at 1562. Thus, the heightened arbitrary-and-capricious standard of review stands as a check "against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty." *Michoud v. Girod*, 45 U.S. 503, 555 (1846).

Kemper is compensated by defendant at a flat rate, irrespective of its decisions as to individual claims for benefits. (Doc. 22 ¶ 3.) According to the terms of the Plan, "The entire cost of the plan is paid by each BellSouth participating company. Short term [and long term] disability benefits are paid directly by each participating company from a trust established by the company to fund a voluntary employee's beneficiary association under which such

10

benefit is payable." (Doc. 21, Ex. 11 at 3108; *see id.*, Ex. 12 at 3139; *see also* doc. 27,

Fellows Dec. ¶ 3.) Kimberle Fellows, Director-Trust Finance & Compliance with BellSouth,

testified:

> Several BellSouth corporations jointly sponsor and contribute to an employee benefits trust ("Trust") to provide health care and disability benefits to active BellSouth employees. The Trust exists solely for the purpose of funding benefit payments to participants in the BellSouth Short Term Disability Plan, the BellSouth Long Term Disability Plan, certain medical plans, and certain other non-pension employee benefit plans.

(Doc. 27, Fellows Dec. ¶ 3.)

Because Kemper does not itself incur a direct and immediate expense if it awards

benefits to a plan participant, it "does not have a 'significant conflict of interest;'" therefore,

its decision to "den[y] benefits should be reversed only if the denial is completely

unreasonable." *Duckett v. Blue Cross and Blue Shield*, 123 F. Supp 2d. 1286, 1294-95 (M.D.

Ala. 2002)(quoting *Brown v. Blue Cross & Blue Shield*, 898 F.2d at 1562); *see also Millman*

*v. Kemper National Services*, 147 F. Supp. 2d 1329, 1333 (S.D. Fla. 2001)("Kemper has no

ownership of the money held in trust and thus derives no benefit for denying a claim

rendering a heightened standard inapplicable."). The court finds that Kemper does not have

an "inherent conflict" between its role in administering the plans and its "profit-making

objective." *Brown*, 898 F.2d at 1562. Therefore, its decision to deny plaintiff's claim for

benefits will be reversed only if it is completely unreasonable.

In applying the arbitrary-and-capricious standard, the court must determine whether

Kemper, as the administrator, had a reasonable basis for its decision to deny plaintiff's

benefits based upon the facts known to it at the time the decision was made. *Jett*, 890 F.2d at 1139; *Guy*, 877 F.2d at 39. The decision "need not be the best possible decision, only one with a rational justification." *Griffis v. Delta Family-Care Disability Plan*, 723 F.2d 822, 825 (11th Cir. 1984).

The court has reviewed all of the evidence produced by the parties that was before the Appeals Committee at the time it made its final decision, and, based on that review, the court finds there was no reasonable basis for Kemper to terminate plaintiff's LTD benefits.

The record before Kemper at the time it initially terminated plaintiff's claim for benefits indicated that plaintiff was physically able to perform work at a medium exertion level and that her mental impairments were only mildly limiting. However, on appeal of this initial denial, plaintiff's attorney submitted a subsequent report from plaintiff's treating psychiatrist, Dr. Lee, which indicated that plaintiff had become "totally disabled and unable to work" since Dr. Lee's first report. (*See* doc. 21, Ex. 9 at 158.) Defendant argues that it was not required to give more weight to plaintiff's psychiatrist's second report than his first because the second report "conflicted" with the first report. (Def. Br. in Supp. of Summ. J. at 10.) It argues –

> Dr. Lee's October letter . . . and the "supplemental" evaluation he attached to the letter plainly conflict with the report he submitted to Kemper in March 2001. For example, the October letter states that Plaintiff's "lability of affect . . . render her permanently and totally disabled" (Admin Record, tab 15, p. 2), whereas he reported to Kemper in March that her "ability to modulate affect" was not significantly impaired. (Admin Record, tab 8, p.1). Overall, the March report advised Plaintiff was not significantly impaired and had not been instructed to remain out of work. (Admin. Record, tab 8). In contrast, the

12

October letter concluded that she was "permanently and totally disabled." (Admin. Record, tab 15). . . .

Kemper is not required to give more weight to Dr. Lee's letter to [plaintiff's attorney] than it gave to the March report.

(*Id.* (footnote added).)

Contrary to defendant's assertion, Dr. Lee's March 2001 and October 2001 reports do not "conflict;" rather Dr. Lee's reports represent his opinion of plaintiff's condition over time. As Dr. Lee explained in his October 2001 report, plaintiff's "[s]ymptoms of anxiety and depression were fairly stable [on March 22, 2001]," the date of his original report. (Doc. 21, Ex. 9 at 158; *see also id.* at 106-07.) However, her symptoms of "crying episodes, increased anxiety, [a] sense of frustration and anger" were "exacerbated" by her loss of benefits and "major stresses at home." (*Id.* at 158.) Dr. Lee's conclusion that plaintiff is unable to work in October 2001, due to a worsening of her condition caused by increased stress, is not contradicted by any medical evidence in the record.

Because there is no medical evidence to contradict Dr. Lee's October 2001 report and because that report is not inconsistent with his March 2001 report as defendant argues, the court finds that defendant's decision to reject his October 2001 report and to deny plaintiff's claim for LTD benefits without any contradictory medical evidence to support it, was arbitrary and capricious. *See Levinson v. Reliance Standard Life Insurance Co.*, 245 F.3d 1321, 1326-27 (11th Cir. 2001)(decision to deny benefits was arbitrary and capricious when record before the administrator contained uncontradicted treating physician's opinion that plaintiff was totally disabled under the terms of the plan).

13

Based on the court's finding that Kemper's decision was arbitrary and capricious, the court finds that defendant's motion for summary judgment is due to be denied.

## B.  PLAINTIFF'S MOTION FOR LEAVE TO FILE MOTION FOR SUMMARY JUDGMENT OUT OF TIME

Plaintiff has filed a Motion for Leave to File Motion for Summary Judgment Out of Time.  (Doc. 25.)  Pursuant to the discussion held with counsel at oral argument, the court informed the parties of its intent to deny defendant's Motion for Summary Judgment, and to give plaintiff the opportunity to move for Summary Judgment, obviating the need for a trial. Attached to this Motion is plaintiff's proposed Motion for Summary Judgment, which states:

> Plaintiff, Judy Jones, moves the court to grant plaintiff a summary judgment on the grounds that Kemper's denial of Long Term Disability benefits was arbitrary and capricious and plaintiff is entitled to a judgment as a matter of law.  Judy Jones is entitled to her LTD benefit of $1,521.41 . . . per month from August 1, 2001 through the date of judgment and in the future for as long as she remains disabled under the terms of the plan.

(*Id.*, attachment.)  Defendant did not file an objection to plaintiff's Motion for Leave to File.

Therefore, without objection, plaintiff's Motion for Leave to file a Motion for Summary Judgment will be granted.

14

## CONCLUSION

Based on the foregoing, the court finds that defendant is not entitled to judgment as a matter of law; therefore, its Motion for Summary Judgment will be denied.  Plaintiff's Motion for Leave to File Summary Judgment Out of Time will be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 30th day of March, 2004.

SHARON LOVELACE BLACKBURN
United States District Judge